# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

       Plaintiff,

  v.

Leonard Dwayne Hill,

       Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 14-276 ADM/SER

---

Benjamin Bejar, Esq., Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, for Plaintiff.

Robert D. Richman, Esq., St. Louis Park, MN, for Defendant.

---

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Leonard Dwayne Hill's ("Hill") Objection [Docket No. 63] to Magistrate Judge Steven E. Rau's June 26, 2015 Report and Recommendation [Docket No. 62] ("R&R").  In the R&R, Judge Rau recommends denying Hill's Motion to Suppress Statements, Admissions, and Answers [Docket No. 46] and Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 47].  After a thorough de novo review of the record and for the reasons stated below, Hill's Objection is overruled and Judge Rau's R&R is adopted.

## II.  BACKGROUND[1]

Near midnight on July 9, 2014, St. Paul Police Officers Michael Soucheray ("Officer Soucheray") and Chris Rhoades ("Officer Rhoades") responded to an emergency call of shots

---

[1] The following facts are taken from Judge Rau's R&R.  A condensed version of the facts is presented here; a full recitation of the facts is presented in Judge Rau's R&R.

fired at Willard's Bar, located near North Grotto Street and Edmund Avenue West in St. Paul, Minnesota.  The Officers arrived at the scene within minutes of the 911 call.  Officer Soucheray entered Willard's Bar and Officer Rhoades walked south on North Grotto Street.  Officer Rhoades located several 9-millimeter shell casings on the sidewalk near the bar, as well as additional casings further south.

Witnesses at the scene informed Officer Rhoades that two groups of people had been shooting at each other and had fled.  One witness requested a private conversation with Officer Rhoades.  This person informed Officer Rhoades that he had witnessed the "entire event" and that an individual Officer Rhoades had just spoken with had been with the shooter.  Tr. Mots. Hr'g [Docket No. 61] ("Tr.") 16:15–16.  The witness described the individual with the shooter as wearing a red shirt and shorts.  The witness described the shooter as a heavyset black male with a red shirt.  Finally, the witness informed Officer Rhoades that the shooter had opened the doors of a nearby parked van and said that "he was going to get more ammunition, and then closed the door."  Id. 44:25–45:1.

While Officer Rhoades was talking with witnesses outside, Officer Soucheray was viewing surveillance footage inside Willard's Bar and was providing radio updates as he watched.  The black and white video showed the area outside of the bar and filmed someone shooting a firearm.  Officer Soucheray radioed that the shooter was a black male, probably with a heavy build, wearing a light-colored t-shirt, long shorts, sneakers, and no hat.

Officer Rhoades walked to the van identified by the witness and peered inside.  While inspecting the van, Officer Rhoades noticed a man, later identified as Hill, walking nearby who fit the description of the shooter provided by the witness and corroborated by the video

surveillance.  Hill's walking pace and gait indicated to Officer Rhoades that the he was likely

intoxicated.  As Hill walked past, Officer Rhoades asked him how he was doing.  Hill offered a

slurred and unintelligible response.  When asked where he was coming from, Hill responded that

he was coming from a Wendy's restaurant.  Officer Rhoades determined this response was

suspicious because the nearest Wendy's restaurant was over a half-mile away and the individual

was not carrying a food bag.  Officer Rhoades then asked Hill why he was walking if the van was

his, to which Hill responded that the van was in fact his.

    At this point, Officer Rhoades believed Hill was the shooter.  As Officer Rhoades was

placing Hill in handcuffs, he noticed a bulge in Hill's front pocket.  Officer Rhoades next

conducted a open hand pat-down over Hill's outer clothing, starting with the bulging pocket.

From the feel of the pat-down, Officer Rhoades surmised the pocket was full of loose rounds of

ammunition.  Officer Rhoades testified that he was able to make this determination based on his

experience at the shooting range, and that he was "pretty familiar with what a pocket full of

ammo feels like." Id. 26:15–17.  Officer Rhoades eventually removed twenty-three rounds of 9-

millimeter ammunition from Hill's pocket.[2]  Officer Soucheray conferred again with Officer

Rhoades and "confirmed that the male . . . was the one he had seen on the surveillance footage."

Id. 29:6–8.

### III.  DISCUSSION

**A.  Standard of Review**

    "A district judge may refer to a magistrate judge for recommendation a defendant's

---

[2] Other items were also removed from Hill's pocket that are not subject to the suppression
motion.

motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense." Fed. R. Crim. P. 59(b)(1).  In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b).  A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  Id.

**B.  Motion to Suppress Statements, Admissions, and Answers**

Judge Rau informed the parties at the suppression hearing that he would only address the issues identified and supported by the parties in their briefing.  Tr. 70:20–71:2.  Since Hill did not identify or advance argument that any statements should be suppressed, Judge Rau correctly recommended that Hill's Motion to Suppress Statements be denied.

**C.  Motion to Suppress Evidence**

In his Objection, Hill maintains that Judge Rau erred in concluding that Officer Rhoades had a reasonable, particularized suspicion that Hill was armed and that Officer Rhoades did not exceed the scope of a Terry frisk under Minnesota v. Dickerson, 508 U.S. 366 (1993).

**1.  Officer Rhoades had a reasonable, particularized suspicion that Hill was armed**

Hill does not contend that Officer Rhoades lacked constitutional authority to conduct a Terry stop.  Hill does argue, however, that Officer Rhoades' pat-down violated the Fourth Amendment.  Hill contends that Officer Rhoades' pat-down was unlawful because he received information from a witness of unknown reliability.  Specifically, Hill argues that although the witness identified the shooter as wearing a red shirt, this fact was not reliable because there was a

4

second man in a red t-shirt at the scene.  Hill also contends that Officer Soucheray's description

from the surveillance footage that the shooter was wearing a light-colored t-shirt undermines

Officer Rhoades' suspicion of Hill because Hill's t-shirt was bright red.  As Judge Rau correctly

noted, Hill's arguments are without merit.

While the Fourth Amendment guarantees the "right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const.

amend. IV, "law enforcement officers may make an investigatory stop if they have a reasonable

and articulable suspicion of criminal activity."  United States v. Bustos-Torres, 396 F.3d 935,

942 (8th Cir. 2005) (citing Terry v. Ohio, 392 U.S. 1, 25–31 (1968)).  Once an investigatory stop

has been made, officers "may take steps reasonably necessary to protect their personal safety."

United States v. Stachowiak, 521 F.3d 852, 855 (8th Cir. 2008) (quoting United States v.

Shranklen, 315 F.3d 959, 961 (8th Cir. 2003)).  A pat-down or "protective frisk" for officer

safety is lawful when "specific articulable facts taken together with rational inferences support

the reasonable suspicion that a party was potentially armed and dangerous."  United States v.

Binion, 570 F.3d 1034, 1039 (8th Cir. 2009) (quoting United States v. Ellis, 501 F.3d 958, 961

(8th Cir. 2007)).

Officer Rhoades' suspicion of Hill was not exclusively based on the color of his t-shirt.

In speaking with witnesses outside of Willard's Bar, Officer Rhoades spoke to a black male in a

red shirt.  Officer Rhoades described this individual's stature as "smaller" and noted that he was

wearing a hat.  Tr. 18:2–9.  Both the witness who requested the private conversation and Officer

Soucheray described the shooter a having a "heavy build," and did not identify the shooter as

wearing a hat.  Id. 51:23–24.  Hill matched this description; the other individual with the red t-

shirt did not.  With respect to the shade of the t-shirt, Officer Soucheray's description of a light-colored t-shirt is not inconsistent with the witness' statement that the shooter was wearing a red t-shirt considering the fact that the surveillance footage Officer Soucheray based his description on was in black and white.

Judge Rau addressed Hill's concerns about the witness' reliability, concluding that the witness' tip contained sufficient indicia of reliability.  As Judge Rau correctly observed, the witness provided an eyewitness account of the events, provided a description of the shooter, and identified which direction the shooter had fled shortly after the events unfolded.  See Navarette v. California, 134 S.Ct. 1683, 1689 (2014) (noting that statements made soon after perceiving the event are "especially trustworthy").  Officer Rhoades spoke directly with the witness and was able to ask questions to assess the witness' credibility and reliability.  Finally, the witness' identification was consistent with Officer Soucheray's description gleaned from the video.  See United States v. Buchanan, 574 F.3d 554, 562 (8th Cir. 2009) (noting that independent corroboration increases reliability).  These factors dispel the suggestion that the witness was unreliable and tainted Officer Rhoades' Terry stop and protective pat-down.  Officer Rhoades thus had constitutionally permissive suspicion that Hill was armed to support his legal search of Hill.

### 2. Officer Rhoades' pat-down did not violate Terry

Hill next argues that Officer Rhoades' pat-down exceeded the scope of a frisk contemplated under Terry.  Hill contends Officer Rhoades' assertion that he could tell from his open-handed pat-down that Hill's pocket contained ammunition should be rejected.  Hill argues that Officer Rhoades was able to conclude he had ammunition in his pocket only by

"manipulating" the pocket to get a sense of the size and shape of its contents.  According to Hill, since there was no way Officer Rhoades could identify the ammunition from the pat-down permitted under Terry, the seizure necessarily was unlawful and the ammunition should thus be suppressed.

Terry permits a police officer to perform a limited search absent probable cause "for the discovery of weapons which might be used to harm the officer or others nearby."  Terry, 392 U.S. at 26.  The search may not be used as "a general exploratory search for whatever evidence of criminal activity [the officer] might find."  Id. at 30.  This concept was reiterated in Minnesota v. Dickerson, which noted that a Terry frisk "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence."  508 U.S. at 373 (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)).

In Dickerson, an officer exceeded the scope of Terry by squeezing, sliding, and manipulating an object in a suspect's pocket, which the officer knew was not a weapon, and was then identified as a lump of crack cocaine.  Id. at 378.  The Supreme Court determined that "the officer's continued exploration of [Dickerson's] pocket after having concluded that it contained no weapon . . . amounted to the sort of evidentiary search that Terry expressly refused to authorize."  Id. (citations omitted).

Here, Officer Rhoades' search stands in stark contrast to the search at issue in Dickerson. Officer Rhoades stated that from his pat-search, he "could immediately tell" Hill's pocket "was full of loose rounds of ammunition."  Tr. 26:3–5.  Hill points to no record evidence to rebut this. Officer Rhoades supported his assertion with personal experience from his firearm training. Officer Rhoades testified it was "standard practice" to carry loose ammunition in his pocket.  Tr.

26:8–14.  The experience with ammunition ascribes believability to Officer Rhoades' assertion that he could identify an ammunition-filled pocket without the manipulation or probing proscribed by <u>Dickerson</u>.

Hill also attempts to use Officer Rhoades' police report as evidence that Officer Rhoades' discovery of ammunition was not the product of the pat-down.  This argument is also without merit.  In his police report, Officer Rhoades stated:

> As I conducted a pat search of the males [sic] pockets I could feel what felt like a large amount of ammunition in his front left pocket.  I then put my hand into the pocket and confirmed the item I felt was in fact a handful of 9mm ammunition.

Mem. Supp. Mot. Suppress [Docket No. 58] 5.  As Judge Rau noted, this statement is not inconsistent with Officer Rhoades' claim that he could immediately identify ammunition in Hill's pocket.  Judge Rau correctly concluded that Officer Rhoades was credible and his pat-down did not exceed <u>Terry</u>.[3]

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant Leonard Dwayne Hill's Objection [Docket No. 63] to Magistrate Judge Steven E. Rau's June 26, 2015 Report and Recommendation [Docket No. 62] is **OVERRULED**;

2.  The Report and Recommendation [Docket No. 62] is **ADOPTED**;

3.  Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket

---

[3] Judge Rau also noted that the seizure of ammunition from Hill's pocket was also justified as a search incident to arrest.  <u>See</u> <u>United States v. Rousseau</u>, No. 13-CR-14, 2013 WL 1788082, at *2 (D. Minn. Apr. 26, 2013).  The Court agrees.

No. 46] is **DENIED**; and

4.     Defendant's Motion to Suppress Evidence Obtained as a Result of Search and

Seizure [Docket No. 47] is **DENIED.**

BY THE COURT:


 s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: July 8, 2015

9